TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

**Case No. 19-cv-05168**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF NEW YORK**
-------------------------------------------------------------- x

YATAO WANG,
*on his own behalf and on behalf of others similarly situated*

                                     Plaintiff,

                    v.

MAXIM INTERNATIONAL GROUP INC.
        d/b/a Shanghai Broadway Restaurant,
        d/b/a I Noodles Modern Ramen Restaurant and
        d/b/a Zen Ramen and Sushi; and
ZEN RAMEN AND SUSHI, INC.
        d/b/a I Noodles Modern Ramen Restaurant and
        d/b/a Zen Ramen and Sushi;
YA YAN RUAN
        a/k/a Yayan Ruan,
CELINA LIN,
ZHE LIN
        a/k/a Zheping Lin,
JESSICA "DOE", and
SAM "DOE"

                                     Defendants.
-------------------------------------------------------------- x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**<u>COMPLAINT</u>**

Plaintiff YATAO WANG (hereinafter referred to as Plaintiff), on behalf of himself and

others similarly situated, by and through his attorney, Troy Law, PLLC, hereby brings this

complaint against Defendants MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai

Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and

Sushi; and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and

d/b/a Zen Ramen and Sushi; YA YAN RUAN a/k/a Yayan Ruan, CELINA LIN, ZHE LIN a/k/a

Zheping Lin, JESSICA "DOE", and SAM "DOE", and alleges as follows:

## <u>INTRODUCTION</u>

1.    This action is brought by the Plaintiff YATAO WANG, on behalf of himself as

well as other employees similarly situated, against the Defendants for alleged violations of the

Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law

(NYLL), arising from Defendants' various willfully and unlawful employment policies,

patterns and practices.

2.    Upon information and belief, Defendants have willfully and intentionally

committed widespread violations of the FLSA and NYLL by engaging in pattern and practice

of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and

overtime compensation for all hours worked over forty (40) each workweek.

3.    Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the

Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) out of pocket

expenses to delivery experts on the road, (3) liquidated damages, (4) prejudgment and post-

judgement interest; and or (5) attorney's fees and cost.

4.    Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York

Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the

Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2)

unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for

Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up

to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that

accurately and truthfully lists employee's hours along with the employee's name, employer's

name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) out of pocket expenses to delivery experts on the road, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

5.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in the Southern District Court of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

7.    From on or about May 12, 2016 to May 23, 2019, Plaintiff YATAO WANG was employed by Defendants to work at 150 West 36th Street, New York, NY 10018.

## DEFENDANTS

### *Corporate Defendants*

8.    Defendant MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai

Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi is a domestic business corporation organized under the laws of the State of New York with a principal address at 150 West 36th Street, New York, NY 10018.

9.      MAXIM  INTERNATIONAL  GROUP  INC.  d/b/a  Shanghai  Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

10.     MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi purchased and handled goods moved in interstate commerce.

11.     Defendant ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi is a domestic business corporation organized under the laws of the State of New York with a principal address at 150 West 36th Street, New York, NY 10018.

12.     ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

13.     ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi purchased and handled goods moved in interstate commerce.

### *Owner/Operator Defendants*

14.     The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the

New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

15.    YA YAN RUAN a/k/a Yayan Ruan and CEO of MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

16.    YA YAN RUAN A/K/A YAYAN RUAN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

17.    CELINA LIN and New York Alcoholic Beverage Control principal for MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant,

d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN

RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen

Ramen and Sushi.

18.    CELINA LIN acted intentionally and maliciously and is an employer pursuant

to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2,

NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MAXIM

INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles

Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI,

INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

19.    ZHE LIN a/k/a Zheping Lin and Chairman of MAXIM INTERNATIONAL

GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen

Restaurant and d/b/a Zen Ramen and Sushi, (1) had the power to hire and fire employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employee records at MAXIM

INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles

Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI,

INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

20.    ZHE LIN A/K/A ZHEPING LIN acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29

C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable

with MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a

I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN

AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and

Sushi.

21.     JESSICA "DOE" known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

22.     JESSICA "DOE" hired Plainiff.

23.     JESSICA "DOE" acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

24.     SAM "DOE" known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

25.     SAM "DOE" acted intentionally and maliciously and is an employer pursuant

to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MAXIM INTERNATIONAL GROUP INC. d/b/a Shanghai Broadway Restaurant, d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi and ZEN RAMEN AND SUSHI, INC. d/b/a I Noodles Modern Ramen Restaurant and d/b/a Zen Ramen and Sushi.

## **STATEMENT OF FACTS**

### **Wage and Hour Claims**

26.     There are at least 16 to 17 employees at the restaurant at any one time, including at least eight (8) kitchen workers, four (4) to five (5) waiters and two (2) to three (3) cashiers/ receptionists.

27.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

*Plaintiff YATAO WANG*

28.     From on or about May 12, 2016 to May 23, 2019, Plaintiff YATAO WANG was employed by Defendants to work 150 West 36th Street, New York, NY 10018.

29.     Plaintiff YATAO WANG was hired as a deliveryman and worked in that position from on or about May 12, 2016 to May 31, 2016.

30.     Thereafter, Plaintiff YATAO WANG work primarily as a dishwasher and miscellaneous worker and sometimes do the delivery from 15:00 to 17:00 if the deliveryman is off for that day.

31.     Plaintiff YATAO WANG's tasks as a miscellaneous worker includes dishwasher, until he was promoted to start cooking rice, boiling soup, and cooking water in on

or about August 07, 2016, and promoted again to help cook ramen.

32.    From on or about May 12, 2016 to May 31, 2016, Plaintiff YATAO WANG's regular work schedule ran from 10:30 to between 22:00 and 22:30 for twelve (12) hours a day, with no break, from Mondays through Fridays, for twelve (12) hours and sixty (60) hours a week; from 11:30 to between 21:00 and 21:30 for ten (10) hours a day, with no break, on Sundays for a total of seventy (70) hours each week.

33.    From on or about June 01, 2016 to September 30, 2016, Plaintiff YATAO WANG's regular work schedule ran from 10:30 to 22:30 for twelve (12) hours a day, with no break, from Mondays through Fridays, with no break, for twelve (12) hours and sixty (60) hours a week; from 11:30 to between 21:00 and 22:30 for eleven (11) hours a day, with no break, on Sundays for a total of seventy one (71) hours each week.

34.    From on or about October 01, 2016 to October 31, 2017, Plaintiff YATAO WANG's regular work schedule ran from 10:30 to 22:30 for twelve (12) hours a day, with no break, from Mondays through Fridays, for twelve (12) hours and sixty (60) hours a week; from 11:30 to between 21:00 and 22:30 for eleven (11) hours a day on Sundays for a total of seventy one (71) hours each week.

35.    While Plaintiff YATAO WANG was supposedly given an hour's "break" during this period, he was actually "on call," meaning that if the restaurant was busy, he would have to work through his break.

36.    Upon Plaintiff's personal knowledge, Plaintiff had his full hour break around sixty five percent (65%) of the time; had only half (.5) break around twenty five percent (25%) of the time; and no break at all for ten percent (10%) of the time.

37.    From on or about November 01, 2017 to May 23, 2019, Plaintiff YATAO

WANG's regular work schedule ran from 10:00 to between 21:30 and 22:00 for twelve (12) hours a day, from Mondays through Fridays, for twelve (12) hours and sixty (60) hours a week; from 16:00 to 22:00 for six (6) hours a day, on Sundays for a total of 67 hours each week.

38.     Upon Plaintiff's personal knowledge, Plaintiff had his full hour break around sixty five percent (65%) of the time; had only half (.5) break around twenty five percent (25%) of the time; and no break at all for ten percent (10%) of the time.

39.     At all relevant times, Plaintiff YATAO WANG did not have a fixed time for lunch or for dinner.

40.     In fact, Plaintiff YATAO WANG had only ten (10) minutes to eat and even then he was on call, meaning that if customer's order came, his break stopped and he had to deliver.

41.     From on or about May 12, 2016 to August 06, 2016, Plaintiff YATAO WANG was paid a flat compensation at a rate of five hundred dollars ($500.00) per week.

42.     From on or about August 07, 2016 to September 20, 2016 , Plaintiff YATAO WANG was paid a flat compensation at a rate of five hundred twenty-five dollars ($525.00) per week.

43.     From on or about September 21, 2016 to October 24, 2016, Plaintiff YATAO WANG was paid a flat compensation at a rate of six hundred dollars ($600.00) per week.

44.     From on or about October 25, 2016 to December 01, 2016, Plaintiff YATAO WANG was paid a flat compensation at a rate of six hundred fifty dollars ($650.00) per week.

45.     From on or about December 02, 2016 to January 28, 2017, Plaintiff YATAO WANG was paid a flat compensation at a rate of seven hundred dollars ($700.00) per week.

46.     From on or about January 29, 2017 to February 16, 2017, Plaintiff YATAO WANG was paid a flat compensation at a rate of seven hundred twenty-five dollars ($725.00) per week.

47.     From on or about February 17, 2017 to June 01, 2017, Plaintiff YATAO WANG was paid a flat compensation at a rate of seven hundred fifty dollars ($750.00) per week.

48.     From on or about June 02, 2017 to August 24, 2017, Plaintiff YATAO WANG was paid a flat compensation at a rate of seven hundred seventy-five dollars ($775.00) per week.

49.     From on or about August 25, 2017 to May 23, 2019, Plaintiff YATAO WANG was paid a flat compensation 9at a rate of eight hundred dollars ($800.00) per week.

50.     At all relevant times, Plaintiff YATAO WANG was not paid overtime pay for overtime work.

51.     As a non-tipped worker, Plaintiff YATAO WANG spends the vast majority of his time performing non-tipped work.

52.     Throughout his employment, Plaintiff YATAO WANG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

53.     Throughout his employment, Plaintiff YATAO WANG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

54.     Throughout his employment, Plaintiff YATAO WANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

55.     As part of Plaintiff's employment with Defendants, Plaintiff YATAO WANG was required to bear the cost of the purchase and maintenance of electric bicycles.

56.     During Plaintiff's employment with Defendants, Plaintiff YATAO WANG had his electric bicycle robbed twice.

57.     As a result of the first robbery (which was reported to the police), Plaintiff YATAO WANG paid One Thousand Three Hundred and Five Dollars ($1305) plus One Hundred Fifteen Dollars and Eighty One ($115.81) from the Arrow E-Bike Shop on 287 Broome Street, New York.

58.     As a result of the second robbery (which was also reported to the police), Plaintiff YATAO WANG paid One Thousand Three Hundred Thirty Three Dollars ($1,333.33) plus One Hundred and Seventeen Dollars from the Arrow E-Bike Shop on 287 Broome Street, New York.

## COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiff  brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings his NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

61.     All said persons, including Plaintiff, are referred to herein as the "Class."

62.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

63.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

64.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

b.      Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

c.      Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

d.      Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.      Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

f.      Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

g.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

h.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

i.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***

65.      Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class

members similarly, and Defendants benefitted from the same type of unfair and/or wrongful

acts as to each Class member. Plaintiff and other Class members sustained similar losses,

injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

66.    Plaintiff is able to fairly and adequately protect the interests of the Class and

have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are

experienced and competent in representing Plaintiffs in both class action and wage-and-hour

employment litigation cases.

### Superiority

67.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage-and-hour litigation where

individual Class members lack the financial resources to vigorously prosecute a lawsuit

against corporate defendants. Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously,

efficiently and without the unnecessary duplication of efforts and expenses that numerous

individual actions engender. Because the losses, injuries and damages suffered by each of the

individual Class members are small in the sense pertinent to a class action analysis, the

expenses and burden of individual litigation would make it extremely difficult or impossible

for the individual Class members to redress the wrongs done to them. Further, important

public interests will be served by addressing the matter as a class action. The adjudication of

individual litigation claims would result in a great expenditure of Court and public resources;

however, treating the claims as a class action would result in a significant saving of these

costs. The prosecution of separate actions by individual members of the Class would create a

risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

68.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage Brought on behalf of the Plaintiff and the FLSA Collective]**

69.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full, and the similarly situated collective action members, for some or all of the hours they worked.

71.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an

additional equal amount as liquidated damages.

72.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
**[Violation of New York Labor Law—Failure to Pay Minimum Wage
Brought on behalf of Plaintiff and Rule 23 Class]**

73.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74.     At all relevant times, Plaintiff is employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

75.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

76.     Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

77.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime
Brought on behalf of the Plaintiff and the FLSA Collective]**

78.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

80.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

81.     Defendants' failure to pay Plaintiff  and the FLSA Collective their overtime pay violated the FLSA.

82.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff  and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

83.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

84.     Defendants willfully failed to notify Plaintiff  and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

85.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff  and Collective Class Members the statutory

overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiff and Rule 23 Class]

86.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

88.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

89.    Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

90.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay Brought on behalf of Plaintiff and Rule 23 Class]

91.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

93.    Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and the Rule 23 Class]

94.     Plaintiff  re-alleges and incorporates  by reference all preceding paragraphs as though fully set forth herein.

95.     The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

96.     Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff worked.

97.     Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

98.     Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

99.     Plaintiff  re-alleges and incorporates  by reference all preceding paragraphs as though fully set forth herein.

100.    Defendants did not maintain, establish and preserve Plaintiff's  weekly payroll

records for a period of not less than six years, as required by NYCRR § 146-2.1.

101.    As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

102.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff in order to facilitate their exploitation of Plaintiff's labor.

103.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.

**COUNT VIII.**
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice**
**Brought on behalf of Plaintiff and Rule 23 Class]**

104.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

106.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

107.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

108.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiff and Rule 23 Class]

109.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

110.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

111.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

112.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT X.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric
### Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs
### Brought on behalf of the Plaintiff and the Class]

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

114.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

115.    Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of his electricity delivery bicycle.

116.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

117.    Plaintiff purchased, maintained and repaired the electric bicycle at his own expense.

118.    Plaintiff performed these deliveries for the sole benefit of the Defendants.

119.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

120.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

121.    Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

122.    Defendants owe Plaintiff his overdue costs of delivery vehicles, cost of batter

change, if applicable, and maintenance of the bicycle.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e) An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall

automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.


Dated: Flushing, New York

June 2, 2019

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*


/s/ John Troy
John Troy (JT0481)